SCHOTT, Chief Judge,
dissenting:
A key issue in this case is whether appellant could make a valid donation to appellee of an automobile which belonged to a professional law corporation of which he was a member. Regardless of his intentions when he gave appellant the use of the automobile he was not free to donate the corporation’s property.
The facts are not contradicted that the automobile was initially purchased by the corporation with corporation funds obtained from a bank with which the corporation had an open line of credit. Title was transferred to the corporation which at all times insured and maintained the automobile.
In order for ownership to become vested in appellee, it had to be divested from the corporation. A professional corporation is subject to all the provisions of the Business Corporation Law except to the extent that these provisions might be inconsistent with the Professional Law Corporations Act. LSA-R.S. 12:802. A professional law corporation may not engage in any business other than the practice of law, but it may hold property for investment or in connection with its law practice. § 804. A conclusion that appellant could, on his own, without any authorization, give away to his wife or anyone else, an expensive, valuable asset of the corporation would be inconsistent with the notion that a corporation has an identity as a juridical person that is separate and distinct from its shareholders). C.C. art. 24.
The extent to which courts recognize the concept that a corporation has its own personality is demonstrated by Riggins v. Dixie Shoring Co., Inc., 590 So.2d 1164 (La.1991). This involved an effort by a creditor of the corporation to pierce the corporate veil and make the shareholder personally liable. In that situation where the assets of the corporation were allegedly diverted to the shareholders, the court used the corporate tax records of depreciation of the assets to show that the equipment remained the property of the corporation. Regarding a truck titled in the corporation, but purportedly being used by a successor business entry, the court found there was no diversion of the truck from among corporate assets.
Assuming that appellant could donate the corporation’s property as though it were his own I respectfully submit that the evidence is insufficient to establish a donation of the automobile.
To accomplish a donation inter vivos by manual gift accompanied by real delivery under LSA-C.C. art. 1539, the donor’s will to give and actual possession of the movable property by the donee must operate simultaneously; and the burden of proving that a donation was made rests on the party alleging the donation, who, by strong and convincing proof, must establish both that the donor intended to presently and irrevocably divest himself of the thing and that delivery actually took place. Adams v. Security Insurance Co. of Hartford, 533 So.2d 140, 145 (La.App. 1 Cir.1988), writ granted 535 So.2d 733; reversed in *517 part on other grounds 543 So.2d 480 (La.1989). In the present case, there is no question that there was a manual delivery of the automobile. However, appellee did not prove that appellant intended to irrevocably divest himself of the car. She did not prove that the intent was to transfer ownership. The evidence presented at trial demonstrated that she was given the use, not the ownership, of the vehicle with the full understanding that the corporation would take the car back when the time came to dispose of it or replace it.
The Adams case demonstrates the difficulty of establishing a donation in these circumstances. In that case the donee who was the donor’s daughter selected a car as a wedding gift. At the wedding reception the father presented the car keys to his daughter and the car was wrapped up in a huge bow. The down payment was made by the donor’s business, a sole proprietorship, the title was registered in the name of the company, it was financed by the company, and it was insured under the business policy. The court concluded:
Based on the evidence, we find that Security failed to establish by strong and convincing proof that Ray Lloyd intended to presently and irrevocably divest Shell of ownership of the vehicle at his daughter’s wedding. Lloyd’s retention of title to the vehicle in Shell’s name and his maintenance of insurance on the vehicle under Shell’s policy are acts by Lloyd which show that his intent was to retain ownership in Shell while his daughter and son-in-law were to have the use and possession of the vehicle.
I would reach the same conclusion in the present case and reverse the trial court.